Good morning, Your Honors. Elizabeth Prevett for Appellant Lynch, Arthur. Good morning, Ms. Prevett. The Supreme Court in Terry v. Ohio and later in United States v. Cortez said that the central teaching of the Court's Fourth Amendment jurisprudence is the demand for specificity in the information upon which police action is predicated. The importance of this demand goes well beyond cases in which evidence of criminal wrongdoing is discovered. This Court in United States v. McCoy affirmed a district court's suppression of evidence and noted the district court's thoughtful discussion in support of suppression. That discussion described the importance of specificity as a bulwark against racial profiling and differential treatment of those who happen to live or to drive through areas that are The question in this case presents the issue of the bounds of specificity required by the Fourth Amendment in the Terry stop context. The question is whether a police officer was justified in stopping two African-American men, where the only physical description the police officer had at the time of the stop was that there were two armed African-American men wearing heavy, dark clothing. The men were walking on a street that was parallel to a street where, five minutes earlier, two men were seen running shortly after a cell phone store was robbed. And they were seen running in the direction of an MBTA station. The policeman saw no evidence of guns when he saw Mr. Arthur and his co-defendant, Mr. Brown. And, indeed, they weren't armed. The description that he had was extremely generic. Let me press you some on that, Counselor. As I understand it, the information he had was he had a specification of race, whether they were black or white, and that would have precluded some percentage of people he could have seen. He was told they were wearing dark clothing. The location in which he found them, he wasn't six miles from the site or whatever. And the direction in which they were moving, he was also told the number of individuals was two, not three or one or more. What precedent is there that would allow us to say that that volume of information, that it's clear error for the court to conclude that that was sufficient? Well, frankly, there are very few cases in this circuit with that blanket description and that problematic location. In terms of location, I would say the Camacho case is the closest. Yeah, but Camacho is totally distinguishable because Camacho, there was no description at all. All right? I mean, you have the factors, in addition to the factors Judge Chiara has just listed, you also had the fact that a crime had, in the immediate past, been committed, and the report that the officer had, contrary to some of the cases you've cited, was from his own dispatcher who had gotten it from the 9-11 call and was presumably reliable. The 9-11 call had originated with the clerk who had ostensibly been robbed, and I thought all these reasonable suspicion cases are fact sensitive, so every case is different in that sense, right? But also, isn't reasonable suspicion on a sliding scale so that the degree of suspicion you need depends, in a sense, on the degree of the intrusiveness of the stop? I mean, I'm struggling with the notion that the officer in this case, Officer Golden, didn't have enough at that point to at least stop these two men and ask them a couple of questions, especially considering that no one else was out in the neighborhood who in any way approximated these descriptions. Well, I think there are a number of problematic factors in both the description and the location. First, with the description, there was nothing unusual about wearing heavy clothing, for example, on October 31st. The Officer Golden himself testified that the area was 60 percent African-American. There was no description of any hair or facial characteristics, and notably, Mr. Arthur had a goatee. But there's no mis-description. There was no information to the officer that the suspects didn't have facial hair. No, no, there wasn't. He had a very brief partial description. In terms of the location, I think that there are many factors that actually would point to these not being the two suspects. The Officer Golden got the call that these were two men who were running down Moultrie Street. Five minutes later, he encountered Mr. Arthur and Mr. Brown, and he said that that was an eighth of a mile from the cell phone store, which was right on the corner of Moultrie and Washington. The most reasonable hypothesis is that people who were running are going to be a lot farther away than an eighth of a mile. He was also told that they were running in the direction of the MBTA station, and as Officer Golden went down Moultrie Street, he took a left on Alston and then a left on Kenwood, and he bypassed the most direct route to the MBTA station. In Appendix 1 on page 277, there's a map of the area. Also, if you look at the map of the area, he said that he saw nobody on the streets that he rode on, and that's a very narrow swath of where somebody who had been running for five minutes might be. If you look, it's a veritable warren of streets in that area and side streets, so I don't think that much could be concluded from his not having seen anyone on his brief trip. Other problems, I think, with the location, when he came upon Mr. Arthur and Mr. Brown, they were not out of breath, they were not perspiring, they were not startled. There isn't the kind of corroborative information that this court has emphasized as important. Notably, they were not startled, they were not combative, they were not evasive. So there was a lot that would detract from the supposition that these were the suspects. And I'm sure Judge Casper weighed all of that. But, you know, this was just a stomp of the only two people apparent in the neighborhood who met this description shortly after the crime, in the right place, merely for the purpose of asking them a couple of questions. Now, immediately after he stops them, he then gets other information. But if he were merely to ask a couple of questions, he didn't have to engage in a stomp. They were actually cooperative. He could have said, can I ask you a few questions? But, in fact, he said, show me your hands. Yeah. Well, of course, because he's been told there's an armed robbery. Yeah, there's an officer safety issue here. But he's not permitted to simply stop anybody who fits a very generic description in the area. No. If he had picked two people out of 50 who were apparent on the street, this would be a different case. But he didn't. He picked the only two people who were in the area, matched the description. And within a minute after he stopped them, began getting other information that made it very clear to him that they were the right people. Well, I think you can only use the information that he had at the time of the stop to assess. That's true, but you can only balance that against the initial questioning. In other words, that information wasn't the justification for taking them to the show-up identification. That's a different issue. Yeah, that's right. Now, if the cases that the government relies on and in which this court has found reasonable suspicion based on location and physical description involve locations that are far closer to the scene of the crime and have much richer descriptions. So, for example, in Muscardy, the police came upon the defendant immediately at the intersection where a domestic assault was taking place. In Brake, the defendant was found immediately adjacent to the area where a gun possession was discovered. So I'd like to rely on the briefs for the eyewitness identification issues. Thank you. Good morning, Your Honors, and may it please the Court. Kelly Lawrence for the United States. The District Court did not err in denying the motion to suppress in this case. There was ample justification for the minimal stop that occurred here. In this, as in all Terry Stout cases, context is everything, and there are obviously factual differences between this case and this Court's precedents. But what we had here, and as the District Court found, were descriptions of the suspect's race, gender, the number of suspects, the color and style of their clothing, and we had a report, the officers had a report about the location the suspects had traveled, the direction they were traveling. That was confirmed by an eyewitness to their flight on Moultrie Street. What do you say about counsel's argument, Ms. Prevost's argument, that the officer also had information about the speed of travel and that he also knew the duration of five minutes, and so if you take running and five minutes, there's, she would argue, no way they would have been where he found them. Well, two answers to that. One, there's a bit of an inconsistency in arguing they should have been closer to the scene if they were running, but the officer has the record. I think the argument is they would have been long gone if they'd been running. Farther away. But the officer here testified that as soon as he received the initial dispatch of just the robbery, he was, according to his testimony, approximately three blocks away from the cell phone store, and he activated his lights and siren and started driving, and he approached the cell phone store. He gets another report that there are two black men running down Moultrie Street. He turns the wrong way down Moultrie, stops to talk to the man raking leaves, continues on his way. This is all happening very quickly. One inference that could be drawn from the facts is that the suspects who had turned from Moultrie onto a side street and onto the parallel street, Kenwood, where they were encountered, might have heard the siren of the police car, might have been alerted to police presence, or might have just known or guessed that when they're running away from an armed robbery, someone might try to find them. They could discard their weapons, their clothing, slow to a walk, try to appear not suspicious by the time anyone found them. That seems to be an inference that's well supported by the record here. It wasn't found explicitly by the district court, but it's the facts that support that. And in all cases, as the district court found and as the officer testified, after he confirmed with the man raking leaves that two black men had run past, he continued down the street and around the corner and saw the two defendants who matched the description that he had been given. And he said that when he saw them, he stopped his car because they matched. One was a heavier man. He didn't know yet that one suspect was heavier or thinner, but he described them as one was heavier and wearing the black coat and jeans, and the other was skinnier and wearing the maroon or reddish-brown sweatshirt and black pants. That was what he knew, dark, heavy clothing, two black men in the right location at the right time. He was certainly justified in stopping his car and asking them if they knew anything about the robbery that had just occurred. In the government's view, that was reasonable suspicion to support the stop, and the motion to suppress was correctly denied. If there are no further questions, the government will also rest on its brief with regard to the reliability of the victim's identification. Thank you. Thank you, Ms. Long.